# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**BENJAMIN T.**[1],

        Plaintiff,

   v.

**ANDREW M. SAUL,** Commissioner of
Social Security,

        Defendant.

Case No. 6:20-cv-550-SI

**OPINION AND ORDER**

Katherine L. Eitenmiller, Mark A. Manning, HARDER, WELLS, BARON & MANNING PC,
474 Willamette Street, Eugene, Oregon 97401. Of Attorneys for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney, and Renata Gowie, Civil Chief, UNITED
STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Benjamin
J. Groebner, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social
Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104.
Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Benjamin T. (Plaintiff) brings this action pursuant § 205(g) of the Social Security Act

(the Act), *as amended*, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party in this case. When applicable, this opinion uses the same
designation for a non-governmental party's immediate family member.

Commissioner of Social Security (the Commissioner) denying Plaintiff's claim for supplemental security income and disability insurance benefits. For the following reasons, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A. Plaintiff's Application

On January 31, 2017, Plaintiff filed an application for disability insurance benefits and supplemental security income, alleging a disability onset date of October 7, 2016. Plaintiff was born on June 23, 1986 and was 30 years old at the date of onset. Plaintiff's claim was denied initially and upon reconsideration. Plaintiff appeared at a hearing before Administrative Law Judge (ALJ) Mark Triplett in April 2019. On May 21, 2019, the ALJ issued a decision finding Plaintiff not disabled and denying Plaintiff's claim. Plaintiff requested review by the Appeals Council, which was denied in February 2020, making the ALJ's decision the final decision of the Commissioner.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.   Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirements of the Act through September 30, 2020. AR 15. At step one of the sequential analysis, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 7, 2016, the alleged onset date. *Id.* At step two, he found the following severe, medically determinable impairments: "spine disorder – lumber degenerative disc disease, arthropathy – primarily shoulder, knees, and ankle, depression, posttraumatic stress disorder (PTSD), and seizure disorder." *Id.* At step three, he found no impairment that met or equaled the severity of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 16. Before reaching step four, the ALJ determined that Plaintiff had the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except [Plaintiff] can never climb ladders, ropes, or scaffolds. He can tolerate no exposure to workplace hazards such as unprotected heights and exposed, moving machinery. The claimant can perform simple, routine tasks and can tolerate occasional contact with the general public.

AR 18. At step four, the ALJ found Plaintiff unable to perform any past relevant work. AR 25.

At step five, the ALJ found that there were jobs existing in significant numbers in the national

economy that Plaintiff had the ability to perform. Therefore, the ALJ found that Plaintiff was not

disabled under the Act from October 7, 2016, the alleged onset date, through the date of the

decision.

## DISCUSSION

Plaintiff raises three objections. First, he objects that the ALJ did not give clear and

convincing reasons supported by substantial evidence for rejecting Plaintiff's subjective

symptom testimony. Second, he objects that the ALJ did not give legally sufficient reasons

supported by substantial evidence to reject an examining medical source opinion and the "other"

medical source opinion of a nurse practitioner. Third, he objects that the ALJ did not give

germane reasons for rejecting lay witness testimony by Plaintiff's adoptive mother. Plaintiff

argues that these errors were harmful and when all improperly rejected evidence is credited as

true, this Court should reverse the ALJ and remand for calculation of benefits. The

Commissioner disputes all objections.

### A. Plaintiff's Symptom Testimony

Plaintiff argues that the ALJ did not give specific, clear, and convincing reasons

supported by substantial evidence for not crediting the full extent of Plaintiff's testimony. The

Commissioner argues that the ALJ provided such reasons by relying upon the medical evidence

and Plaintiff's conservative course of treatment.

A claimant "may make statements about the intensity, persistence, and limiting effects of

his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[2] There is a two-step

_____

[2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR
16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-

process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016

---

3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Plaintiff's symptom testimony, as summarized by the ALJ, was that: he had a seizure disorder causing absence seizures ten to twenty times a day; he is bedridden for five days after doing errands or chores like shopping or laundry because of his pain; and he has emotional

problems including PTSD, bipolar disorder, and depression which impact his behavior and memory, resulting in difficulty working. The ALJ noted after describing each area of testimony that Plaintiff relies solely on marijuana to treat these impairments and their symptoms. After the ALJ described Plaintiff's testimony and the limitations therein, and then credited some, but not all of Plaintiff's symptom testimony, stating that the "intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 19.

The ALJ has provided clear, and convincing reasons for his decision to credit less than all of Plaintiff's symptom testimony. The ALJ relied on the medical record, Plaintiff's conservative course of treatment, and Plaintiff's daily activities. The ALJ clearly explained how substantial evidence supported these three for giving less than full credit to Plaintiff's symptom testimony.

### 1. Medical Evidence

Following his recitation of Plaintiff's symptom testimony, the ALJ began his discussion of the medical record. An ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, reject subjective testimony *solely* because it was not fully corroborated by objective medical evidence. *Robbins*, 466 F.3d at 883; *see also* 20 C.F.R. § 404.1529(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

The ALJ first discussed the opinions of two state agency consulting physicians, William Nisbet, M.D., and Martin Kehrli, M.D. Dr. Nisbet acknowledges Plaintiff's 2001 lumbar surgery, but noted that treatment notes from Plaintiff's 2016 medical marijuana exam found no

unsteadiness, and that Plaintiff had brought and carried a large backpack to that exam. Dr. Nisbet also noted x-rays taken in February, 2017 of Plaintiffs left foot and ankle, which were negative. Plaintiff's normal gait and station was again noted in these records. Plaintiff had a full range of motion in his physical exam, intact muscle strength, and intact protective sensation. Dr. Nisbet also considered Plaintiff's activities as a camp host, which included cooking, outdoor cleaning, outdoor repairs, light gardening, and resting a majority of the day.

Dr. Kehrli made similar observations, noting that Plaintiff had normal physical exams, walked normally without a cane at his general medical exams, and that newer exams had found no deformity, no extremity tenderness, intact strength, full range of motion, intact neurovascular exam, intact sensation, and the use an unprescribed and unnecessary cane. Dr. Kehrli also noted that Plaintiff relied solely on marijuana to treat all of his alleged symptoms. Drs. Nisbet and Kehrli both endorsed Plaintiff's ability to lift or carry 50 pounds occasionally and 25 pounds frequently, to stand or walk for 6 of 8 hours in a work day, to sit for 6 of 8 hours in a work day, occasionally climb ladders/ropes/scaffolds, and frequently climb stairs/ramps, stoop, kneel, crouch, and crawl.

The ALJ found that the opinions of Drs. Kehrli and Nisbet were generally consistent with the record, but did not account for Plaintiff's seizure disorder, disc disease, or arthropathy. The ALJ found that Plaintiffs seizures were largely under control, according to Plaintiff's testimony, and could be accounted for by limiting Plaintiff's exposure to workplace hazards. The ALJ found that the Nisbet and Kehrli opinions were well supported given Plaintiff's conservative care, but he further reduced the RFC assigned by Drs. Kehrli and Nisbet from medium to light work to account for Plaintiff's arthropathies.

The ALJ also discussed Plaintiff's mental and behavioral limitations. Two state agency consultants, Joshua Boyd, Psy.D., and Imgard Friedburg, Ph.D., provided opinions finding that Plaintiff can carry out short, simple instructions in jobs with occasional public contact. Plaintiff's ability to have occasional public contact, in their opinions, was evidenced by his daily activities. Exams from 2016 and 2017 showed normal mood and affect, intact insight and judgment, limited delusional and mild paranoia symptoms, and slightly tangential thought processes.

The discussion of these medical records and opinion was clear, convincing, and supported by substantial evidence. Because the ALJ's reliance on this evidence was proper, no error was committed, and the decision to give less than full weight to Plaintiff's symptom testimony is affirmed.

### 2. Conservative Treatment

Routine, conservative treatment can be sufficient to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference that symptoms were not "as all-disabling" as the claimant reported. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

In addition to relying on the opinion of the two state agency physicians, the ALJ performed his own analysis of the medical record, finding that Plaintiff's treatment level did not support his testimony about chronic pain. The ALJ noted two non-opioid medications that the Plaintiff took, Gabapentin and Lyrica, in addition to marijuana. Plaintiff testified in the hearing

that the Lyrica and Gabapentin are specifically for his seizure disorder, but that both "also help treat the fibromyalgia." [3] AR 53. The ALJ notes in his opinion that the Lyrica was taken for Plaintiff's pain. The ALJ also mentioned that Plaintiff made a one-time attempt at an injection treatment for ankle pain but did not attempt any other injection therapies for his back or joints. One orthopedic surgeon also found that Plaintiff's back injury did not warrant surgery. The ALJ noted that despite a number of psychiatric diagnoses, Plaintiff continued to rely solely on marijuana for treatment of his mental health conditions. The ALJ clearly stated where he thought that Plaintiff's reliance on marijuana as the primary or sole form of treatment was more conservative than the type of treatment which one would expect from a claimant with Plaintiff's alleged symptoms.

Plaintiff argues that his reason for declining medication is his delusional and paranoid thinking related to medication, and it is therefore consistent with Plaintiff's symptom testimony. The record shows that Plaintiff's hesitancy to take medications other than marijuana has been linked to delusional thinking that occurred when he took Cymbalta, but the Court observes that such hesitancy appears inconsistent with Plaintiff's testified-to compliance with Gabapentin and Lyrica. Whether this is true or not, the ALJ's position that Plaintiff's claim that he is bedridden and debilitated by pain for days at a time after doing simple errands cannot be fully credited in light of Plaintiff's failure to try other types of pain medication or treatment is a clear, convincing reason supported by substantial evidence for giving less than full weight to Plaintiff's testimony. Other types of treatments, such as surgeries, physical therapy, injections, among others, are noted as possibilities in the record for the conditions Plaintiff is found to have. Even absent any

_____

[3] Fibromyalgia was not found to be a severe impairment, and Plaintiff has not challenged this finding.

reliance on Plaintiff's preference for Marijuana over other forms of medication, the ALJ has properly relied upon Plaintiff's conservative treatment relative to his symptom testimony.

### 3. Activities

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the activities do not need to be equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to

treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

Plaintiff argues that the ALJ erred by finding that Plaintiff's daily activities contradict or undermine his symptom testimony. To the extent Plaintiff's activities related to his duties as a camp host, these activities were not a clear or convincing reason to discount symptom testimony. The activities in question—functioning minimally as a camp host by cooking, doing outdoor cleaning, repairs, and light gardening, but spending some days lying down all day—amount to sporadic, light work that may contradict claims of a totally debilitating impairment, but Plaintiff has not made such a claim. His allegations of the ability to carry out some light work and then experience significant pain and limitation after the fact is consistent with the activities in the record. It is further consistent with Plaintiff's testimony at the hearing that he lost his position as a camp host, which further renders the ALJ's reliance on Plaintiff's ability to carry out his camp host duties less than clear and convincing.

There are other activities in the record, however, that the ALJ properly relied upon. Plaintiff was observed transporting a large backpack to the appointment where he obtained his medical marijuana prescription, and Plaintiff drives himself frequently. These observations may validly be relied upon to undermine testimony about the extent of pain and impact of seizures. Plaintiff also interacts with others in public regularly and is able to use public transportation and carry out tasks such as maintenance, meal preparation, and shopping which the ALJ found contradict some of Plaintiff's mental symptom allegations regarding focus and memory.

An error is harmless if it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012); *see also Robbins*, 466 F.3d at 885 (noting that an error is harmless if it is "clear from the record the error was inconsequential to the

ultimate non-disability determination"). Because the ALJ properly relied upon the medical evidence and Plaintiff's conservative course of treatment, error caused by the improper reliance on some of Plaintiff's activities was inconsequential to the ultimate outcome and therefore harmless.

## B.  Medical Evidence

Plaintiff argues that the ALJ erred in his rejection of medical opinion evidence from Scott Alvord, Psy.D., and Aloycha De La Roche, PMHNP. The Commissioner argues that the ALJ provided valid reasons under the relevant legal standards for assigning less than full weight to the opinions of an examining physician and nurse practitioner that conflict with the opinions of the state agency's consulting physicians.

### 1.  Scott Alvord, PsyD

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. For claims filed before March 27, 2017, the Ninth Circuit and the Commissioner[4] distinguish between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631; *see also* 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of another physician contradicts the opinion of an examining

---

[4] Because Plaintiff filed his application before March 17, 2017, the application is governed by 20 C.F.R. §§ 404.1527 and 416.927, and the revised rules relating to the consideration of medical opinion testimony do not apply.

physician, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554 F.3d at 1228; *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison¸* 759 F.3d at 1013; *see also Smolen*, 80 F.3d at 1286 (noting that an ALJ effectively rejects an opinion when he or she ignores it).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). In other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). "[T]he opinion of a non-examining medical advisor cannot by itself constitute substantial evidence that justifies the

rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted); *but see id.* at 600 (opinions of non-treating or nonexamining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record).

Dr. Alvord is an examining physician. Plaintiff argues that the ALJ did not apply the correct "regulatory factors" in considering his opinion. Plaintiff cites to precedent requiring that an ALJ consider elements of a *treating* physician's opinion in support of this contention. *See Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017). Those factors, such as the length of the treating relationship and frequency of examination, are irrelevant to Dr. Alvord's examining opinion.

Plaintiff also argues that the ALJ did not provide specific, legitimate reasons supported by substantial evidence. The ALJ properly discussed and evaluated Dr. Alvord's opinion by giving specific, legitimate reasons for giving it some but not full weight. First, the ALJ found the opinion overly vague. AR 23. The Ninth Circuit has held vague descriptions such as "limited" or "fair" were properly discounted as "not useful because they failed to specify [the claimant's] functional limits." *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020). In this instance, Dr. Alvord's functional assessment stated only that Plaintiff "would have difficulty" or "would not have difficulty" in each of eight functional areas, without further explanation. AR 531. The ALJ reasonably determined the opinion did not provide much "probative value" due to this vagueness. AR 23.

The ALJ also found that the "severity" of Dr. Alvord's conclusions was "at odds with the results of Dr. Alvord's mental status exam." This is a specific and legitimate reason for failing to fully credit an examining physician's opinion, and it is supported by the record evidence. The

Ninth Circuit has repeatedly held inconsistency between a source's examination findings and the source's opinion is a valid reason to discount the opinion. *See, e.g., Ford*, 950 F.3d at 1154 (manipulative limitations inconsistent with treatment notes showing "very mild" carpal tunnel syndrome). Dr. Alvord opined Plaintiff would have "difficulty" completing a normal workday, performing on a consistent basis, and maintaining regular attendance. Dr. Alvord's exam found that Plaintiff displayed normal intelligence, memory, and concentration in mental status testing and Wechsler Adult Intelligence Scale (WAIS-IV) testing, and he observed that plaintiff had adequate insight and judgment. The ALJ's finding that the results of this exam are inconsistent with the broad, albeit vague, limitations contained in the report is valid.

The ALJ also found that Dr. Alvord's opinion was inconsistent with Plaintiff's activities, including Plaintiff's self-reported ability to manage finances, shop, and cook as evidence of adequate ability to sustain concentration and persistence for simple tasks. These are specific, legitimate reasons for giving less weight to an examining physician's medical opinion. While, as discussed above, these activities do not necessarily contradict Plaintiff's pain symptom testimony, they are properly relied upon by the ALJ when evaluating Plaintiff's ability to carry out simple tasks.

### 2. Aloycha de la Roche, PMHNP

Effective March 27, 2017, the Social Security Administration amended its regulations and Social Security Rulings ("SSRs") relating to the evaluation of medical evidence, including the consideration of "acceptable medical sources" and "non-acceptable medical sources" or "other medical sources."[5] Most of these changes were effective only for claims filed after

---

[5] Among things, the Commissioner rescinded SSR 06-03p, broadened the definition of acceptable medical sources to include Advanced Practice Registered Nurses (such as nurse practitioners), audiologists, and physician assistants for impairments within their licensed scope of practice, and clarified that all medical sources, not just acceptable medical sources, can

March 27, 2017. The Administration, however, implemented revised versions of 20 C.F.R.

§§ 404.1527(f) and 416.927(f) to provide "clear and comprehensive guidance" about how to

consider "other" medical sources for claims filed before March 27, 2017. *Revisions to Rules*

*Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Because

Plaintiff's claim was filed before March 27, 2017, and the ALJ issued his opinion after

March 27, 2017, the revised version of 20 C.F.R. § 404.1527, § 416.927, §§ 404.1527

and 416.927 governs Plaintiff's claim.

These revised regulations incorporate the policy in SSR 06-03p of separating acceptable

medical sources (licensed physicians and certain other qualified specialists) from "other"

medical sources, and generally giving less deference to "other" medical sources. It also

incorporates the policies of requiring the ALJ to consider "other" medical source opinions,

explain the weight given to such opinions, provide sufficient analysis to allow a subsequent

reviewer to follow the ALJ's reasoning, and to provide sufficient detail and explanation if the

ALJ gives greater weight to an opinion from an "other" medical source than a medical opinion

from a treating source. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82

Fed. Reg. 5844, 5845; *see also* 20 C.F.R. §§ 404.1527(f), 416.927(f). Because Ms. De la Roche

is a nurse practitioner, she is considered an "other" medical source.

An ALJ may not reject the competent testimony of "other" medical sources without

comment. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). To reject the competent

testimony of "other" medical sources, the ALJ need only give "reasons germane to each witness

for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Turner v. Comm'r*

provide evidence that will be considered medical opinions. *See* 20 C.F.R. §§ 404.1502, 416.902;
82 F. Reg. 8544; 82 F. Reg. 15263.

*of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). An ALJ errs by failing to "explain her reasons

for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674

F.3d at 1115 (quoting *Nguyen*, 100 F.3d at 1467 (9th Cir. 1996)). This error may be harmless

"where the testimony is similar to other testimony that the ALJ validly discounted, or where the

testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.*

at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless

where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also

discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560

(8th Cir. 2011)). When an ALJ ignores *uncontradicted* lay witness testimony that is highly

probative of the claimant's condition, "a reviewing court cannot consider the error harmless

unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony,

could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

The ALJ appropriately identified and put forth multiple germane reasons to reject de la

Roche's opinion, including overreliance on subjective allegations, inconsistency with the record,

and that some opinions were outside de la Roche's area of practice. The ALJ discounted de la

Roche's opinion as "entirely reliant" on Plaintiff's subjective allegations. "If a treating

provider's opinions are based to a large extent on an applicant's self-reports and not on clinical

evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating

provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (internal quotation

marks omitted). De la Roche's opinion does not refer to any objective or observational findings

related to psychological testing or mental status examinations. Instead, the opinion repeats

Plaintiff's narrative descriptions of his experiences and symptoms, and then makes conclusion

without accompanying analysis.

Plaintiff argues that failing to adopt de la Roche's opinion because it relied on subjective reports "disregards the nature of psychiatric treatment and evaluation." But the ALJ did not simply discount the de la Roche opinion because nature of psychiatric treatment requires some reliance on subjective accounts. Rather, the ALJ specifically stated that the de la Roche opinion was *entirely reliant* on Plaintiff's own narrative, offering no other form of evaluation or testing, or observations connecting Plaintiff's behavior to his functional capacity. Buttressing this finding, the ALJ pointed out several specific ways in which the record developed by other practitioners contradicted de la Roche's recitation of Plaintiff's testimony.

The ALJ noted inconsistencies between the record and de la Roche's opinion, discounting the opinion as a result. De la Roche reported Plaintiff experienced auditory and visual hallucinations, paranoia, and "magical thinking," but no provider observed instances where he appeared to be responding to internal stimuli. Although de la Roche reported Plaintiff had poor memory, objective examination findings, including her own observations, indicated normal memory. The ALJ similarly found limitations of "poor concentration" and difficulty interacting with others unsupported by the record, and in conflict with her treatment notes. The ALJ points out Plaintiff's apparent satisfaction with marijuana and rejection of other alternatives is not consistent with the extreme limitations assigned by de la Roche, which include inability to sit longer than 20 minutes or stand longer than 30 minutes at one time, and lifting/carrying restricted to less than five pounds.

Finally, the ALJ discounted de la Roche's opinion regarding physical limitations as outside her area of practice. Generally, more weight is afforded an opinion of a specialist on medical issues related to that specialty. 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5). Plaintiff argues that de la Roche is a registered nurse. Her main area of practice, however, is psychiatric,

not medical. As the ALJ notes, the extreme limitations she assigned far exceed those found by acceptable medical sources who practice physical medicine. All of the above-described reasons are germane and valid reasons for an ALJ to reject the opinion of a nurse practitioner where the alleged onset date is before March 27, 2017.

## C.  Lay Witness Testimony

Plaintiff argues that the ALJ did not provide germane reasons for rejecting the lay witness testimony provided by his adoptive mother, Theresa T. "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Id.* at 1115 (quoting *Nguyen*, 100 F.3d at 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a

reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

Theresa's third party function report stated that Plaintiff was born with fetal alcohol syndrome; he was as able to complete tasks only in short intervals with rest periods; pain symptoms affected his ability to sleep; at times, he needed reminders to cut his hair, eat healthy foods, take vitamins, and take his medication; he was able to prepare simple meals; he was able to clean his small trailer and fold laundry while seated; he was able to drive and go out alone; he did not have any friends; he spoke to family on the phone and spent time only with the ranger at the park where he lived; he attended church; he sometimes had trouble understanding advice and/or instructions; he experienced short and long-term memory loss; he did well with written instructions but needed spoken instructions repeated; he could become overwhelmed if he had too many tasks to complete at a time; and he needed time and clear reasoning for changes in routine before he could comfortably transition to something new.

The ALJ found that the level of debilitation described was not consistent with Plaintiff's overall functioning, nor with objective imaging and diagnostics, which had not confirmed a traumatic brain injury or fetal alcohol syndrome. The ALJ highlighted that Plaintiff's parents did not have the medical training necessary to make "exacting observations" about Plaintiff's moods or mannerisms. These are all germane reasons. Plaintiff argues that the ALJ may not disregard Plaintiff's mother's claim that he has fetal alcohol syndrome and a traumatic brain injury, because an ALJ may not disregard symptoms purely for lack of support from the medical record. Fetal alcohol syndrome is not a symptom, nor is traumatic brain injury. They are medical diagnoses. An ALJ is not required to accord medical diagnoses made by lay witnesses any

credibility, because a medical diagnosis is beyond the competence of a lay witness and does not constitute competent evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). And, as the ALJ highlights,

Plaintiff further argues that his mother discussed the same activities as those that the ALJ relied on earlier in his decision, such as the ability to cook, do outdoor cleaning, outdoor repairs, and light gardening some days, and that he lays down all day other days. This, Plaintiff argues, contradicts the ALJ's statement that "the level of debilitation described is not consistent with the claimant's overall functioning". AR 24. While Plaintiff is correct that there is some overlap between the third-party function statement and activities the ALJ discussed as being inconsistent with Plaintiff's alleged symptoms, it is not clear to this Court why this fact helps Plaintiff's case. As discussed above, some but not all of the ALJ's activities analysis was valid. The same analysis, which was partially erroneous but ultimately harmless, could be inferred to apply when the same activities are discussed in this statement.

Further, there is substantial evidence contained in the prior discussion of Plaintiff's medical record showing the ALJ's clear and convincing findings that Plaintiff functioned at a higher level than his testimony conveyed. When a lay witness' statement is contradicted by the medical record, as indicated by the ALJ's mention of Plaintiff's "overall functioning," that is a germane reason for its rejection. Therefore, the ALJ's proper analysis when construing Plaintiff's own symptom testimony applies equally to the similar testimony of his mother insofar as the testimony overlaps.

**CONCLUSION**

The Commissioner's decision that Plaintiff was not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 28th day of May, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge